# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

RHONDA LEANNE SALES,

    *Plaintiff,*

vs.

Case No. 16-2757-EFM

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

    *Defendant.*

## MEMORANDUM AND ORDER

Plaintiff Rhonda Sales seeks review of a final decision by Defendant, the Acting Commissioner of Social Security ("Commissioner"), finding that she is no longer disabled and thus no longer entitled to disability insurance benefits under Title II of the Social Security Act ("the Act"). Sales alleges that the administrative law judge ("ALJ") erred in assessing her residual functioning capacity ("RFC") and in assessing her credibility. Finding that the Commissioner's decision was supported by substantial evidence and followed the proper legal standards, the Court affirms.

### I. Factual and Procedural Background

Sales was born in 1977, completed a GED, and previously worked as a retail cashier, last working in 2003. In 2008, an ALJ determined that she was disabled due to depression, migraine headaches, and disorders of the knee, hip, back, and neck. Sales's impairments limited her to a

reduced range of sedentary work, and her migraines meant she would miss more than 12 days of work per year.  A vocational expert testified at the hearing that there were no jobs which would allow an employee to miss more than one day a month.

In July of 2012, the Social Security Administration ("SSA") reviewed Sales's claim and determined that her condition had improved and she was no longer disabled.  Sales requested a hearing in front of an ALJ, who found her no longer disabled.  After the Appeals Council ordered a second hearing, ALJ Michael Mance ruled on August 26, 2015, that Sales had experienced medical improvement of her impairments and was no longer disabled.  He found that, as of July 1, 2012, Sales had medically determinable impairments of migraines and chronic pain syndrome.  He found Sales's subjective complaints about her pain only partially credible, based on a discrepancy between the objective medical evidence and the alleged severity of her back pain and migraines, her refusal to try treatment options other than narcotic painkilling drugs, and her level of activity in her daily life.

The ALJ gave great weight to the psychological opinions of the state agency psychological consultants, Drs. Rebecca Miles, Robert Blum, and Richard Maxfield, who concluded that Sales had no significant mental or psychological impairments.  The ALJ gave great weight to the medical opinion of Dr. Paul Kindling, a non-examining state agency medical consultant.  The ALJ did not give significant weight to the medical opinion of Dr. Maria Palmeri, Sales's treating physician at the time, because her opinions were based primarily on Sales's subjective complaints, not the objective medical findings.  Dr. Palmeri had concluded that Sales's impairments mostly prevent her from engaging in gainful employment.  The ALJ found that Sales had an RFC which limited her to a range of sedentary work (largely in line with Dr.

Kindling's assessment) and that there were a number of jobs in the national economy which her impairments would not prevent her from holding.

The Appeals Council denied Sales's request for rehearing, rendering the ALJ's decision the final decision of the Commissioner. Sales timely appealed that decision to this Court.

## II.     Legal Standard

Judicial review of the Commissioner's decision is guided by the Act, which provides that the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive.[1]  The Court must therefore determine whether the factual findings of the Commissioner are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard.[2]  "Substantial evidence is more than a scintilla, but less than a preponderance; in short, it is such evidence as a reasonable mind might accept to support the conclusion."[3]  The Court may "neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]."[4]

An individual is under a disability only if she can "establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months."[5]  This impairment "must be severe enough that she is unable to perform her past relevant work, and

---

[1] 42 U.S.C. § 405(g).

[2] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[3] *Barkley v. Astrue*, 2010 WL 3001753, at *1 (D. Kan. 2010) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)).

[4] *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)).

[5] *Brennan v. Astrue*, 501 F. Supp. 2d 1303, 1306-07 (D. Kan. 2007) (citing 42 U.S.C. § 423(d)).

further cannot engage in other substantial gainful work existing in the national economy, considering her age, education, and work experience."[6]

After the Commissioner finds a claimant disabled, the Commissioner will periodically review the claimant's continued entitlement to disability benefits.[7] The Commissioner uses an eight-step process for determining whether a claimant remains entitled to benefits.[8] If at any step the ALJ finds the claimant disabled or not disabled, the inquiry stops; otherwise, the ALJ continues through the steps of the process.[9] The first step requires the ALJ to determine whether the claimant has been engaged in substantial gainful activity; if so, the claimant is no longer disabled.[10] At step two the ALJ determines whether the claimant has an impairment or combination of impairments which meet or medically equal one of the listed impairments in the regulations; if so, the claimant is still disabled.[11] At step three the ALJ determines whether there has been medical improvement to the claimant's impairments. If there has been medical improvement, the ALJ continues to step four; if there has been no improvement, the ALJ continues to step five.[12] At step four the ALJ determines whether the medical improvement is related to the claimant's ability to work. If it is not related to the claimant's ability to work, the

---

[6] *Barkley*, 2010 WL 3001753, at *2 (citing *Barnhart v. Walton*, 535 U.S. 212, 217-22 (2002); 20 C.F.R. § 416.920 (2005)).

[7] 20 C.F.R. § 404.1594(a).

[8] *Hayden v. Barnhart*, 374 F.3d 986, 988 (10th Cir. 2004) (citing 20 C.F.R. § 404.1594(f)(1)-(8)).

[9] 20 C.F.R. § 404.1594(f).

[10] *Id.*

[11] *Id.*

[12] *Id.*

ALJ continues to step five; if it is, the ALJ continues to step six.[13] At step five the ALJ determines whether one of a number of listed exceptions applies, resulting in the claimant's disability ending despite no medical improvement in the claimant's impairments.[14] At step six the ALJ determines whether all of the claimant's current impairments in combination are severe and significantly limit her ability to do basic work activities; if they are not severe, the claimant is not disabled.[15] At step seven the ALJ assesses the claimant's RFC and determines whether the claimant can perform her past work; if she can, she is not disabled.[16] Finally, at step eight the ALJ determines whether the claimant can do other work in the national economy, given her RFC, age, education, and experience. If the claimant can perform other work, she is not disabled; if she cannot, her disability continues.[17]

### III. Analysis

Sales alleges that the ALJ's assessment of her RFC and his determination of her credibility were unsupported by the substantial evidence of the record as a whole. The Court disagrees.

**A.  RFC Findings**

Sales first argues that the ALJ's RFC determination is flawed because he failed to address her migraines or account for the number of days of work she would miss each month. She points out that one of the primary reasons for the Commissioner's 2008 conclusion that she was

---

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] *Id.*

disabled was the amount of time she would miss each month because of her migraines. Sales argues that her migraines are still severe and frequent enough to prevent her from getting and keeping a job. Because the ALJ did not mention any functional limitations from her migraines in his RFC determination, Sales argues that the RFC is unsupported by substantial evidence.

What Sales fails to acknowledge in her argument is that, while the actual RFC did not account for her migraines, the ALJ did explain his evaluation of her alleged migraines in his discussion of her RFC. The ALJ noted that Sales's own descriptions of the frequency and duration of her migraines are contradictory.[18] At different times, Sales has claimed that her headaches last two to three days and that they last seven to ten days. Whatever the frequency and duration of her headaches, the ALJ found that they were not as debilitating as Sales claimed. He supported this conclusion by pointing out that Sales did not show signs of weight loss, dehydration, or muscle weakness from spending days at a time in bed. The ALJ also noted that there was no indication of an underlying neurological cause for her headaches and that Sales did not complain of migraines during many of her primary care appointments. The record also indicates that at least one doctor who examined Sales believed her headaches were not migraines, but were instead tension-style headaches. Furthermore, at least one doctor noted that narcotic painkillers were not a proper treatment for migraines. Because the record contains more than a scintilla of evidence[19] to support the ALJ's finding regarding Sales's migraines, the Court holds that it was supported by substantial evidence.

---

[18] On one form, Sales claimed that she experienced seven migraines per week, but only ten per month. While it appears that the ALJ counted that claim against her credibility, that claim was almost certainly a mistake, possibly due to Sales misreading the form; on the next page of the same form, she claimed that her migraines lasted seven to ten days.

[19] *See Barkley*, 2010 WL 3001753, at *1.

Sales next attacks the ALJ's RFC determination by arguing that he improperly weighed the medical opinions of Dr. Kindling and Dr. Palmeri. Dr. Kindling completed a physical RFC assessment form as a nonexamining agency medical consultant; he concluded that Sales could perform a range of light work, as defined by 20 C.F.R. § 404.1567(b).[20] Dr. Palmeri completed a medical source statement as Sales's current treating physician; she concluded that Sales's condition prevented her from lifting more than ten pounds, sitting or standing for more than 20 minutes, and, ultimately, engaging in gainful employment.

The ALJ gave great weight to Dr. Kindling's opinion, because it was based on and consistent with the evidence in the record; he also noted that Dr. Kindling is familiar with the disability determination process and the relevant regulations. The ALJ did not give significant weight to the opinion of Dr. Palmeri, because it was unsupported by any objective medical findings and seemed to be based primarily on Sales's subjective complaints. But the ALJ ultimately concluded that Sales had the capacity to perform a range of sedentary work, as defined by 20 C.F.R. § 404.1567(a).[21]

Sales argues that the ALJ should not have given Dr. Kindling's opinion great weight because it did not include any limitations due to her migraines, it was merely an advisory opinion, and Dr. Kindling did not examine or treat Sales. Sales is wrong in her claim that Dr. Kindling, like the ALJ, did not account for her migraines in his RFC determination. Dr.

---

[20] Dr. Kindling concluded that Sales could occasionally lift 20 pounds; frequently lift ten pounds; stand or walk for at least two hours and sit for about six hours in an eight hour workday; push and pull with no limitations; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; and, frequently balance, stoop, kneel, crouch, and crawl.

[21] The ALJ's RFC was more favorable to Sales than Dr. Kindling's RFC was. The ALJ determined that Sales could lift no more than ten pounds; occasionally walk and stand; occasionally climb ramps and stairs; never climb ropes, ladders, or scaffolds; occasionally stoop and kneel; never crouch or crawl; and never operate foot controls. She would also need to be allowed to alternate between sitting and standing every 40 minutes.

Kindling specifically mentions that one of Sales's treating physicians was skeptical of her self-diagnosis of migraines and that this doctor instead diagnosed her with tension headaches. The treating physician was skeptical partly because Sales claimed she was using hydrocodone to treat her headaches, but migraines are not treated with opioids. Dr. Kindling concluded that her headaches were not migraines, yet they added to her general pain picture. He accounted for Sales's headaches, but because he concluded that they were not migraines, he disagreed with Sales and Dr. Palmeri on whether Sales would need to miss multiple days of work each month. Because Dr. Kindling's opinion comported with the medical evidence in the record, the ALJ was permitted to give it great weight.

Sales's argument that Dr. Kindling's opinion does not constitute substantial evidence, as it was merely an advisory opinion and he did not examine or treat her, is without merit. Sales does not cite to any case law, statute, or regulation to support her argument that an agency medical consultant's opinion should not be considered substantial evidence because it is "only a preliminary, advisory, or partial opinion." The ALJ is required to consider the opinions of government agency medical consultants.[22] These consultants, like Dr. Kindling, are "highly qualified and experts in Social Security disability evaluation."[23] While Dr. Kindling did not examine Sales, he reviewed the medical record in her case and came to a conclusion about her RFC based on her medical history. Dr. Kindling's opinion, considered with the rest of the medical record on which he relied, constitutes substantial evidence supporting the ALJ's decision.

---

[22] 20 C.F.R. § 404.1513a(b)(1); *see also* Soc. Sec. Ruling 96-6p, 1996 WL 374180, at *2 (Soc. Sec. Admin. 1996).

[23] 20 C.F.R. § 404.1513a(b)(1).

Sales argues that the ALJ erred in not giving Dr. Palmeri's opinion controlling weight, as she was Sales's treating physician at the time of the ALJ's decision. However, the opinion of a treating physician is only entitled to controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."[24] Here, the ALJ noted that Dr. Palmeri's opinion was not supported by any objective medical evidence, but was instead based primarily off of Sales's subjective complaints, and that Dr. Palmeri's conclusions were inconsistent with the other evidence in the record, specifically Sales's statements concerning her level of daily activity at home and ability to manage household chores. In essence, Sales wants the Court to reweigh the evidence that the ALJ considered; however, the Court is not permitted to do so.[25] Because the ALJ found that Dr. Palmeri's opinion was neither well-supported by medically acceptable techniques nor consistent with the rest of the record evidence, his decision not to give it controlling weight was proper.

Sales further argues that, after deciding not to give Dr. Palmeri's opinion controlling weight, the ALJ failed to explain why he did not give it significant weight, using the list of factors in 20 C.F.R. § 404.1527. These factors are: (1) length of treatment relationship and frequency of examination; (2) nature and extent of treatment relationship; (3) supportability; (4) consistency with the record as a whole; (5) specialization of the treating physician; and (6) other factors.[26]

---

[24] 20 C.F.R. § 404.1527(c)(2).

[25] *Bowman*, 511 F.3d at 1272 (quoting *Casias*, 933 F.2d at 800).

[26] 20 C.F.R. § 404.1527(c)(2)-(6).

Sales claims that the ALJ addressed none of these factors, but that is patently untrue. The ALJ specifically stated that Dr. Palmeri's opinion was unsupported by objective medical findings and was inconsistent with the record as a whole, including Sales's own descriptions of her daily activities. Although the ALJ did not systematically review Dr. Palmeri's opinion according to each specific factor, the law does not require him to do so.[27] The ALJ's decision just needs to be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."[28] Here, the ALJ articulated his reasons for not giving Dr. Palmeri's opinion significant weight. Accordingly, the ALJ complied with the proper legal standard for weighing treating medical source opinions.

Sales next makes two arguments which merit minimal consideration. First, she argues that, because Dr. Kindling's opinions are not substantial evidence and the ALJ rejected Dr. Palmeri's opinions, the ALJ should have further developed the record. However, because the Court held that Dr. Kindling's opinions are entitled to the weight that the ALJ gave them, this argument is moot. Second, she argues that the ALJ failed to identify the significance of the date (July 1, 2012) he chose for when her disability ended. As the Commissioner pointed out in her Brief, the ALJ concluded that Sales was no longer disabled as of July 1, 2012, because that is the date when the SSA reviewed Sales's disability determination and found she was no longer disabled.

Sales's last argument challenging the ALJ's RFC determination involves the consulting psychological opinions of Dr. Blum and Dr. Maxfield. Relying on the psychological evaluation

---

[27] *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("[Plaintiff] cites no law, and we have found none, requiring an ALJ's decision to apply expressly each of the six relevant factors in deciding what weight to give a medical opinion.").

[28] *Id.* (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)).

conducted by Dr. Miles, Dr. Blum and Dr. Maxfield each concluded that Sales had either mild or no limitations in the four broad functional areas set out in the regulations[29] (restriction of activities of daily living; difficulties in maintaining social functioning; difficulties in maintaining concentration, persistence, or pace; and, episodes of decompensation).[30]  The ALJ gave great weight to the opinions of all three psychologists, and then made his own determinations as to Sales's limitations in each of the four broad areas.  He found that Sales had no mental limitations in activities of daily living or social functioning, no more than mild limitations in maintaining concentration, persistence, or pace, and no episodes of decompensation.

Sales argues the ALJ did not account for the findings of Dr. Blum and Dr. Maxfield in his assessment of her RFC.  She argues that even non-severe impairments may significantly limit an individual's ability to work when considered with the rest of her mental and physical impairments.  She claims that the available jobs listed by the ALJ (document preparer, charge account clerk, and order clerk) would have been eliminated if the ALJ had included any limitations in Sales's ability to maintain concentration, persistence, or pace, or in her ability to interact with other people.

The Commissioner counters that the ALJ did account for these mild mental limitations by limiting Sales to unskilled work.  The three examples of jobs that the ALJ found that Sales could perform were all unskilled and sedentary.  The Commissioner cites *Vigil v. Colvin*,[31] arguing that a limitation to unskilled work takes into account even moderate limitations in concentration,

---

[29] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00C (Effective: Aug. 12, 2015 to May 23, 2016).

[30] These were the four broad functional areas specified by the regulations at the time the ALJ made his decision.  They have since been changed to: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and, adapt or manage oneself.  20 C.F.R. § 404.1520a(c)(3).

[31] 805 F.3d 1199, 1204 (10th Cir. 2015).

persistence, and pace.[32] The Commissioner argues that the limitation to unskilled work adequately accounted for Sales's mild mental limitations because the expert opinions assessed no more than mild limitations and Sales did not testify to any mental limitations.

The Commissioner's argument on this point holds more weight. All of the cases cited by Sales dealt with claimants who had at least moderate limitations, but here Sales was found to have either mild or no limitations in the four broad functional areas. 20 C.F.R. § 404.1520a(d)(1) provides that the Commissioner will generally conclude that a claimant's impairment is not severe if the claimant's degrees of limitation are rated as "none" or "mild." This draws a clear distinction between "mild" and "moderate" limitations. Sales's failure to cite to any case holding that a limitation to unskilled work does not account for mild mental limitations ultimately dooms her argument. At the administrative hearing before the ALJ, Sales focused on her physical impairments (migraines and chronic low back pain, which radiates to her hip and leg) and did not testify to her mental limitations. Because Sales herself focused solely on her physical maladies, and because the ALJ found that she had virtually no mental limitations, it was proper for the ALJ to focus his discussion on Sales's physical impairments and account for any mild mental limitations by limiting Sales to unskilled work.

Finally, Sales argues that, because the ALJ improperly assessed her RFC, the hypothetical he gave to the vocational expert at the administrative hearing was flawed. Because the Court holds that the RFC was not improperly assessed, the Court also holds that the hypothetical to the vocational expert was not flawed.

---

[32] *See also Smith v. Colvin*, 821 F.3d 1264, 1269 (10th Cir. 2015) (holding that an ALJ can account for moderate limitations by limiting the claimant to simple, repetitive, and routine tasks, with no face-to-face contact with the public).

## B. Credibility Determination

Sales's second group of claims center around the ALJ's assessment of her credibility, specifically his discounting of her contentions of the persistence and limiting effects of her back pain and migraines. As a preliminary matter, the Court recognizes that "some claimants exaggerate symptoms for the purposes of obtaining government benefits,"[33] so a reviewing court owes particular deference to an ALJ's credibility findings.[34] However, "deference is not an absolute rule."[35] And while the case law sets out a list of factors[36] for the ALJs to consider when assessing claimant credibility, "[t]here is not a talismanic requirement that each factor . . . be addressed."[37] The ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."[38]

---

[33] *Bolan v. Barnhart*, 212 F. Supp. 2d 1248, 1260 (D. Kan. 2002) (citing *Frey v. Bowen*, 816 F.2d 508, 517 (10th Cir. 1987)).

[34] *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quoting *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990)).

[35] *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993).

[36] "Some of the possible factors include: the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nomedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nomedical testimony with objective medical evidence." *Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988).

[37] *Thompson*, 987 F.2d at 1490.

[38] Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *4 (Soc. Sec. Admin. 1996). Sales and the Commissioner dispute whether this Ruling or Soc. Sec. Ruling 16-3p, which superseded 96-7p, applies to the ALJ's decision. After both sides submitted their briefs, the SSA republished 16-3p, clarifying that the Ruling in place at the time of the ALJ's decision, in this case 96-7p, should be applied by a reviewing court. Soc. Sec. Ruling 16-3p, 2017 WL 5180304, at *1 (Soc. Sec. Admin. 2017).

Sales first argues that the ALJ did not follow the proper procedure in considering her failure to seek and follow prescribed medical treatment. According to Sales, the ALJ should have considered whether the treatment would restore her ability to work, whether the treatment was prescribed, whether the treatment was refused, and whether the refusal was without justifiable excuse.[39] Sales does not provide answers to these questions in her brief, but claims that the ALJ's decision should be reversed because he did not specifically seek answers to them. This argument fails.

The four part test for failure to follow treatment in *Frey* is only required when the ALJ uses failure to follow treatment as a reason to deny benefits to an otherwise disabled claimant, not when using it as a credibility factor.[40] Here, the ALJ acknowledged that Sales suffers from headaches and chronic pain, but he disputed the severity and limiting effects of her pain. Her refusal to see a pain psychologist or try alternate forms of pain relief demonstrate that her pain is not as severe as she claims it is; multiple doctors have also remarked that narcotic painkillers are not a recognized treatment for migraines. Sales's actions, in the view of the ALJ, show that she is more interested in assigning blame for her pain and maintaining her hydrocodone prescription than in actually alleviating her pain. The ALJ used her noncompliance only to question her pain levels, not to deny her benefits despite her disability.

Sales disputes the ALJ's characterization of her attempts to receive treatment; she is correct, and the Commissioner agrees, that the ALJ probably overstated her refusal to try different pain treatment options. However, there is substantial evidence in the record that Sales

---

[39] *Thompson*, 987 F.2d at 1490 (quoting *Frey*, 816 F.2d at 517).

[40] *Van Norman v. Berryhill*, 2017 WL 1397536, at *4 (D. Kan. 2017) (citing *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000); *Johnson v. Colvin*, 640 F. App'x 770, 774 (10th Cir. 2016); *Bales v. Colvin*, 576 F. App'x 792, 800 n.5 (10th Cir. 2014)).

was heavily opposed to "messing with" her hydrocodone prescription: she changed primary care physicians when her first physician indicated he would wean her off her prescription and declined to establish care at the University of Kansas Hospital when they indicated they would do the same. So while the ALJ misstated Sales's noncompliance with treatment, his conclusion was still largely supported by the evidence, and the Court will not "insist on technical perfection."[41] The Court also may not "displace the ALJ's choice between two fairly conflicting views even though the Court may have justifiably made a different choice."[42] Therefore, the ALJ did not err in relying on Sales's failure to follow suggested treatment to assess her credibility.

Sales's final argument is that the ALJ improperly assessed her level of activity in daily living. She incorrectly claims that this is the only other rationale (in addition to her failure to follow treatment advice) the ALJ used to find her not credible. The ALJ noted that Sales was able to feed and groom herself, do some household chores, and go grocery shopping on her own. Sales argues that the ALJ failed to account for the help she receives from her mother and son, and that the ALJ overstated the household chores she is able to accomplish on her own.

This argument amounts to a request for the Court to reweigh the ALJ's findings of fact. As stated above, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."[43] In this case, the ALJ gave specific

---

[41] *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012).

[42] *Golisch v. Colvin*, 205 F. Supp. 3d 1276, 1285-86 (D. Kan. 2016) (citing *Oldham*, 509 F.3d at 1257-58).

[43] Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *4.

reasons for his credibility findings, supported them with evidence from the record, and made them specific enough for the Court to adequately assess them. In addition to summing up Sales's own descriptions of her daily activities, the ALJ described how Sales's complaints were not supported by the objective medical evidence. He noted the lack of any objective imaging or examinations showing an underlying cause for the amount of pain that Sales alleges she suffers. Sales consistently demonstrated a full range of motion of the back and extremities, a normal gait, and normal strength. She did not exhibit signs of spending several days at a time in bed each month, as she alleged she would do during her migraines. The ALJ ultimately concluded that Sales does suffer from some pain, which impairs her ability to work only so far as he described in the RFC. Because the ALJ's conclusion is supported by substantial evidence, the Court will not overturn his decision.

## IV.   Conclusion

The ALJ did not commit any reversible errors in assessing Sales's RFC. The record contains enough evidence to support the ALJ's finding that Sales's headaches are not as debilitating as she claims, and he properly assessed them in relation to her RFC. The ALJ properly weighed the opinions of Dr. Palmeri and Dr. Kindling; his decision to give Dr. Kindling's opinion great weight and to not give Dr. Palmeri's opinion controlling or significant weight comported with the proper legal standards and was supported by substantial evidence. Sales's arguments that the ALJ failed to develop the record and did not properly explain the significance of the date he chose for her medical improvement are wholly without merit. The ALJ made no error in his assessment of Sales's very mild psychological limitations or in his inclusion of them in her RFC by limiting her to unskilled work. Given that the ALJ's assessment of Sales's RFC was not flawed, his hypothetical to the vocational expert was not either.

The ALJ also did not commit any reversible errors in assessing Sales's credibility. He followed the proper legal standards in judging her credibility and adequately explained the reasons for his conclusions. He was not required to conduct a formulaic analysis of Sales's refusal to follow her physicians' treatment advice in order to conclude that her pain is not as disabling as she claims it is. The Court will not reweigh the evidence that the ALJ relied upon to judge Sales's credibility.

**IT IS THEREFORE ORDERED** that the decision of the Commissioner is hereby **AFFIRMED**.

**IT IS SO ORDERED**.

Dated this 18th day of December, 2017.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE